UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FREDDY CRESPO,

    Plaintiff,

v.                                                                    Case No. 5:14cv195-MW-CJK

SCOTT, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court on defendants Lopez, Honeycutt, Lewis, and Solis's "Motion to Dismiss for Failure to Exhaust Administrative Remedies or in the Alternative Motion for Summary Judgment." (Doc. 56).[1]  Defendants argue: (1) plaintiff failed to exhaust the Bureau of Prisons' ("BOP") administrative remedy process; and (2) plaintiff cannot establish an Eighth Amendment deprivation of medical care claim.  Plaintiff responded in opposition. (Doc. 58).  The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After reviewing the record, the parties' submissions, and the relevant law, the undersigned recommends that the defendants' motion be granted.

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Freddy Crespo, proceeding *pro se* and *in forma pauperis*, is an inmate of the BOP currently confined at a correctional institution in Yazoo City, Mississippi. He initiated this *Bivens*[2] action on July 30, 2013. (Doc. 1). On April 21, 2015, plaintiff filed the third amended complaint, the operative pleading in this action. (Doc. 38). The complaint names five employees of the Federal Correctional Institution in Marianna, Florida ("FCI-Marianna") as defendants: Correctional Officer Scott, Lieutenant Honeycutt, Captain Lewis, Lieutenant Solis, and Dr. Hector Lopez.[3] Plaintiff alleges the defendants violated the Eighth Amendment by denying him adequate medical care for a wrist injury. As relief, he seeks $5,000,000 in compensatory damages.

On June 30, 2016, the defendants filed their Motion to Dismiss for Failure to Exhaust Administrative Remedies or in the Alternative Motion for Summary Judgment. (Doc. 56). Plaintiff responded to the motion on August 15, 2016. (Doc. 58).

---

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (recognizing an implied cause of action for damages against federal officers alleged to have violated a citizen's constitutional rights).

[3] Defendant Scott has not been served. The BOP indicates no individual named "Scott" could be identified as employed at FCI-Marianna. The BOP believes plaintiff is mistaken as to the defendant's name.

Case No. 5:14cv195-MW-CJK

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the nonmoving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the nonmoving party (here, plaintiff) and draw all reasonable inferences in favor of that

party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The factual matters pertinent to the resolution of the motion are drawn from plaintiff's verified third amended complaint (doc. 38), the exhibits attached thereto (doc. 38, p. 12-32), and the evidence in the summary judgment record (docs. 56-1 – 56-3). *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for

purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On February 8, 2012, plaintiff injured his left wrist during an altercation in the FCI-Marianna cafeteria. (Doc. 56-1, p. 1; Doc. 56-2, p. 1). The next day, plaintiff reported pain and swelling in his left wrist to Nurse Cooke. (Doc. 56-1, p. 1-2). Cooke assessed a "sprain and/or strain," provided Ibuprofen, and ordered an x-ray that was completed on February 10. (Doc. 56-1, p. 2).

Plaintiff indicates that following the x-ray, medical personnel informed the escorting correctional officer, defendant Scott, that plaintiff's "hand was broken and . . . he needed to have a cast put on it." (Doc. 38, p. 7). Scott, however, stated "I don't care, I am taking him to the [Special Housing Unit ("SHU")]." (*Id.*). After arriving in the SHU, plaintiff complained of severe pain to correctional officers and requested medical attention. (*Id.*, p. 8). Defendants Honeycutt, Lewis, and Solis, however, "refuse[d] to provide him adequate medical attention." (*Id.*).

On February 13, a physician's assistant named Hassan evaluated plaintiff after he complained of a "rash in the inguinal region"; plaintiff did not report any problems with his wrist. (Doc. 56-1, p. 4; Doc. 56-2, p. 2). Because x-rays at FCI-Marianna are interpreted offsite, the prison did not receive the results of February 10 x-rays until February 21. (Doc. 56-2, p. 2). The x-rays showed plaintiff had a

fractured left wrist. (Doc. 56-1, p. 6). Stephanie Young, the interpreting radiologist, noted the following about the x-ray:

> Abnormal. STS with ossifications at dorsal triquetrum on lateral view are c/w acute fracture fragments. Ossification at distal radius on lateral view is likely old fracture fragment and is unchanged. ? Stable ossification at ulnar styloid. Bracelet and plastic cuffs.

(Doc. 38, p. 14). On February 28, a "short arm fiberglass cast" was applied to plaintiff's left arm and the Ibuprofen prescription was renewed. (Doc. 56-1, p. 6; Doc. 56-2, p. 2).

On March 7, plaintiff visited the chronic care clinic for gastrointestinal issues; he had "no complaints with cast on left forearm." (Doc. 56-1, p. 8). Hassan noted: "inmate continues to do strenuous exercises, advised inmate 02/28/12 while doing [special housing unit] rounds not to do strenuous exercises, inmate was dripping with sweat from exercising in his cell." (Doc. 56-1, p. 9). Hassan indicated "cast will be removed and new one placed, inmate must not get the cast wet." (Doc. 56-1, p. 9). Plaintiff returned to Health Services later on March 7; Nurse Prietz noted the following:

> Inmate arrives from SHU c/o skin sores and foul smelling odor coming from his cast. Inmate has gotten his cast wet daily, against instructions. Cast removed, several areas of skin breakdown and one pustule noted on the dorsal aspect of his forearm [at the top of the cast]. His arm was scrubbed with soap and water, antibiotic oint applied to the sores. The skin on his palm was wet and macerated. Short arm volar splint applied, skin care instructions given, I will recheck inmate tomorrow and apply another cast, if the skin maceration is cleared up.

Case No. 5:14cv195-MW-CJK

(Doc. 56-1, p. 10).

On March 14, Prietz observed: "inmate viewed in SHU without splint in place, using his hand as usual." (Doc. 56-1, p. 12). On March 20, Hassan "talked with inmate, he is not using the [splint], explained to him, that he must keep the [splint] in place, inmate wants a full cast again, will not get his cast wet[.]" (Doc. 56-1, p. 13; Doc. 56-2, p. 2). Later that day, Prietz applied a second cast to plaintiff's left arm. (Doc. 56-1, p. 14).

Dr. Hector Lopez evaluated plaintiff on April 6, "after he went on a hunger strike for reasons unrelated to this case." (Doc. 56-1, p. 15; Doc. 56-2, p. 2). Plaintiff did not mention the wrist fracture and Dr. Lopez noted "[t]he cast was in place, dry, and in good condition." (Doc. 56-1, p. 15-16; Doc. 56-2, p. 2). On April 25, the second cast was removed and x-rays were ordered. (Doc. 56-1, p. 17). The radiologist interpreting the x-ray noted: "Negative except for: probable small chronic fx fragments at dorsum of wrist." (Doc. 38, p. 21). After the cast was removed, plaintiff believes "that his hand did not heal properly and in fact was left disfigured[.]" (Doc. 38, p. 9).

On April 26, Nurse Cloud observed plaintiff "playing handball this morning in the rec cage in SHU[.]" (Doc. 56-1, p. 19). The next day, plaintiff complained to Nurse Cooke of pain in his left arm "with a recent onset [of] 12-24 hours." (Doc. 56-1, p. 20; Doc. 56-2, p. 2). Cooke provided plaintiff with Ibuprofen and directed

him to seek additional care if his condition worsened. (Doc. 56-1, p. 21). On May 24, plaintiff returned to the chronic care clinic with gastrointestinal complaints; he reported his "left forearm no longer hurts him." (Doc. 56-1, p. 22).

On June 4, 2012, plaintiff's wrist was x-rayed again. The radiologist found: "Negative except for: comp: 4/26/12. Persistent small bone fragment dorsal to triqutrum. No acute abn." (Doc. 38, p. 20). A May 17, 2013, x-ray was "negative except for: old triquetral fx." (Doc. 38, p. 23).

## DISCUSSION

Exhaustion

Defendants Honeycutt, Lewis, Solis, and Lopez assert plaintiff's claims should be dismissed because plaintiff failed to properly exhaust his administrative remedies. Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary damages. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). The exhaustion requirement applies to *Bivens* actions. *Alexander v. Hawk*,

159 F.3d 1321, 1328 (11th Cir. 1998) (holding that prisoner asserting *Bivens* claim must exhaust available administrative remedies); *Zolicoffer v. Scott*, 55 F.Supp.2d 1372, 1375 (N.D. Ga. 1999), *aff'd*, 252 F.3d 440 (11th Cir. 2001).

Exhaustion of all available administrative remedies is a mandatory precondition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The grievance procedure promulgated by the BOP requires an inmate to: (1) file an informal grievance; (2) file a formal written complaint with the institution by submitting a BP-9 Request for Administrative Remedy; (3) file an appeal to the Regional Director by submitting a BP-10 Regional Administrative Remedy Appeal;

Case No. 5:14cv195-MW-CJK

and (4) file an appeal to the General Counsel for the BOP by submitting a BP-11 Central Office Administrative Remedy Appeal. 28 C.F.R. § 542.10-542.15. Each of these steps is generally required to satisfy the exhaustion requirement. *Id*.

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual

allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Defendants assert plaintiff did not complete the administrative remedy process because he never properly filed a grievance concerning his treatment at the BP-10 or BP-11 levels. (Doc. 56, p. 8). On March 7, 2013, plaintiff submitted a grievance at the BP-9 level concerning his medical treatment. (Doc. 38, p. 30; Doc. 56-3, p .7). The grievance was received on April 3 and denied by the warden on April 23, within the time permitted by the BOP's regulations. (Doc. 38, p. 32; Doc. 56-3, p. 4, 7); *see* 28 C.F.R § 542.18 ("If accepted, a Request or Appeal is considered

Case No. 5:14cv195-MW-CJK

filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days."). Before receiving the Warden's response, however, plaintiff filed a BP-10 grievance appeal dated April 13, 2013. (Doc. 38, p. 31; Doc. 56-3, p. 4, 7). The grievance appeal was received on April 22, and rejected as incomplete on April 26 because plaintiff failed to attach the response to the BP-9 grievance. (Doc. 38, p. 10; Doc. 56-3, p. 4, 7). Plaintiff did not attempt to refile the BP-10 grievance appeal or complete the administrative remedy process at the BP-11 level.

In response, plaintiff makes the conclusory assertion that he "did in fact file his Administrative Remedies from his original BP 8 (Counselor), BP 9 (Warden), BP 10 (Region), and BP 11 (General Counsel)." (Doc. 58, p. 1). Plaintiff claims that due to being transferred between prisons, he "never received a response back from General Counsel in Washington, D.C." (*Id.*). Plaintiff, however, has not presented evidence (e.g. copies of the grievances) showing he resubmitted the BP-10 grievance appeal or that he filed a BP-11 level grievance appeal. In fact, in the complaint plaintiff claimed he was excused from the exhaustion requirement because the BOP's rejection of the April 13 BP-10 grievance appeal was "erroneous." (Doc. 38, p. 9-10). The complaint does not indicate plaintiff properly filed grievance appeals at the BP-10 and BP-11 levels, or that he resubmitted the BP-10 grievance appeal after receiving the response to the BP-9 grievance.

The record, therefore, shows plaintiff never properly completed the BOP's grievance process. Because the PLRA requires proper exhaustion of all available administrative remedies, plaintiff's claims should be dismissed without prejudice. *See Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (holding prisoner must complete any prison administrative remedy process, even when seeking only monetary damages which are not available through the grievance process); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) ("untimely grievance does not satisfy the exhaustion requirement of the PLRA"); *Alexander*, 159 F.3d at 1325 ("the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA"). In addition, because plaintiff failed to exhaust his administrative remedies before commencing this action, his claims against the unserved defendant, Officer Scott, should also be dismissed without prejudice. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and failure to exhaust administrative remedies).

<u>Eighth Amendment</u>

Assuming plaintiff did exhaust his administrative remedies, summary judgment in defendants Honeycutt, Lewis, Solis, and Lopez's favor would still be

Case No. 5:14cv195-MW-CJK

appropriate because the submitted evidence does not establish the defendants were deliberately indifferent to plaintiff's wrist injury.

"In order to sustain a *Bivens* action, the plaintiff . . . must demonstrate that his constitutional rights have been violated." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). A *Bivens* claim arises when prison officials act with deliberate indifference to an inmate's serious medical needs, which violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration."). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation and citation omitted); *see also id.* ("[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm.") (*quoting Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To show a defendant was deliberately indifferent, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To establish deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. For the final element of an Eighth Amendment claim, a plaintiff must show the officials' deliberate indifference caused the plaintiff's injury.

*Taylor*, at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

The evidence is insufficient to establish that defendants Honeycutt, Lewis, and Solis displayed deliberate indifference to plaintiff's wrist injury. In his response to the motion for summary judgment, plaintiff states his "deliberate indifference claim is based on the staff's negligence of taking him to the SHU and placing him in the SHU, after knowing that [p]laintiff's left hand was fractured." (Doc. 58, p. 3). With respect to defendants Honeycutt, Lewis, and Solis, plaintiff's claim fails for several reasons. First, negligence is not sufficient to establish liability under the Eighth Amendment. *See Goodman*, 718 F.3d at 1331-32 (to prove deliberate indifference, a plaintiff must demonstrate the defendant disregarded a known risk of serious harm "by conduct that is more than gross negligence"). Second, plaintiff has not shown Honeycutt, Lewis, or Solis were responsible for taking him from the medical department to SHU. Finally, plaintiff has not established these defendants knew his wrist was fractured.

Furthermore, as correctional officers, these defendants are entitled to rely on the prison's medical staff to diagnose and treat inmates. *See Lynch v. Jackson*, 478 F. App'x 613, 619 (11th Cir. 2012) ("Prison officials who rely on medical personnel for the clinical determinations lack the requisite knowledge for deliberate indifference, absent evidence that clinical determination were unreliable.") (*citing*

*Howell v. Burden,* 12 F.3d 190, 191, 194 (11th Cir. 1994)). Although plaintiff asserts Honeycutt, Lewis, and Solis ignored his complaints of pain and pleas for medical attention after his placement in the SHU, the record contains no evidence indicating Honeycutt, Lewis, or Solis restricted plaintiff's access to medical care. In fact, plaintiff accessed sick-call on February 13, 2012—5 days after the wrist injury—and complained of "a skin rash in the inguinal region." (Doc. 56-1, p. 4-5). At that time, plaintiff had no complaints concerning his wrist. Simply put, plaintiff's complaints of pain do not establish defendants Honeycutt, Lewis, and Solis actually knew of an excessive risk to plaintiff's health and disregarded that risk.

Plaintiff has also failed to establish an Eighth Amendment claim against Dr. Lopez. In his declaration, Dr. Lopez states he "did not directly treat" plaintiff for his wrist injury and "did not order anyone to deny [plaintiff] medical care."[4] (Doc. 56-2, p. 1, 3). Medicals records indicate Dr. Lopez approved: (1) Nurse Cooke's decision to order an x-ray on February 9; and (2) the placement of the cast on February 28. (Doc. 56-1, p. 3, 6-7). The records, however, do not demonstrate Lopez knew of the fracture on February 9 or had any involvement in the decision to handcuff plaintiff and take him to SHU. *See Burnette v. Taylor*, 533 F.3d 1325, 1331

---

[4] After plaintiff went on a hunger strike for reasons not related to this case, Dr. Lopez evaluated him on April 6, 2012. (Doc. 56-2, p. 2). During the encounter, Dr. Lopez noted "cast in left arm in place dry and in well condition." (Doc. 56-1, p. 16).

Case No. 5:14cv195-MW-CJK

(11th Cir. 2008) ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.").

Plaintiff also claims that after his first cast was removed, Dr. Lopez "did order that Plaintiff was not to be given a new cast and that Plaintiff was to be left to manage and heal as he could best."[5] (Doc. 38, p. 8). "After many new requests for adequate medical attention," Dr. Lopez ordered a new cast. (*Id.*). The record shows, however, that Dr. Lopez's decision to defer placement of the new cast could not form the basis for a claim of deliberate indifference.

On March 7, 2012, the first cast was removed because plaintiff had gotten the cast wet and this was causing plaintiff skin problems. Nurse Prietz cleaned plaintiff's arm, applied antibiotic ointment to the skin sores, and placed a short arm volar splint on plaintiff's left arm. The nurse indicated he would "recheck inmate tomorrow and apply another cast, if the skin maceration is cleared up." (Doc. 56-1, p. 10). On March 14, plaintiff was subsequently observed "without the splint in place, using his hand as usual." (*Id.*, p. 12). On March 20, plaintiff reported he was not using the splint. (*Id.*, p. 13). Hassan told plaintiff that he must keep the splint in place, but plaintiff requested "a full cast again" and indicated he would keep it

---

[5] Defendants assert "Dr. Lopez did not have any involvement in the removal of the first cast and the ordering of the splint." (Doc. 56, p. 18). For purposes of resolving the motion, the court will assume Dr. Lopez was aware of the prison medical staff's course of treatment.

Case No. 5:14cv195-MW-CJK

dry. (*Id.*). Consistent with plaintiff's request, Nurse Prietz applied a short arm cast to plaintiff's arm later on March 20. (*Id.*, p. 14).

The foregoing evidence establishes the failure to immediately replace plaintiff's cast was not motivated by malice but by concern over the condition of plaintiff's skin. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (noting that when a prisoner alleges an Eighth Amendment claim based on a delay in treatment, the court considers "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay"). Furthermore, plaintiff was provided with a splint to wear while his skin condition healed. He, however, chose not to consistently use it. When he requested a new cast on March 20, it was provided to him on the same day. The decision to remove the wet cast and apply a splint while plaintiff's skin healed represents a medical judgment and does not demonstrate Dr. Lopez exhibited deliberate indifference to plaintiff's medical needs. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quotation marks omitted). For the same reason, the claim that plaintiff should have received some other form of pain medication, instead of Ibuprofen, does not state an Eighth Amendment deliberate indifference claim.

Accordingly, it is respectfully RECOMMENDED:

1. That defendants Lopez, Honeycutt, Lewis, and Solis's "Motion to Dismiss for Failure to Exhaust Administrative Remedies or in the Alternative Motion for Summary Judgment" (doc. 56) be GRANTED and plaintiff's claims be DISMISSED based on his failure to exhaust his administrative remedies.

2. That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of March, 2017.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITEDSTATESMAGISTRATEJUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 5:14cv195-MW-CJK